IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMPLAINT OF:<br>BORGHESE LANE, LLC<br><br>For Exoneration or Limitation of<br>Liability | )<br>)<br>)<br>)  Civil No. 2:18-cv-00533-MJH (Lead Case)<br>)<br>)  Member and Related Cases: Civil Action Nos.<br>)  18-510; 18-178; 18-913; 18-902; 18-1647; and<br>)  18-317 |

**OPINION and ORDER**

This action arises out of a January 13, 2018 multiple-barge breakaway that originated at Jack's Run Fleet at approximately Mile 4 on the Ohio River and continued downriver to the Emsworth Lock and Dam. Presently before the Court is Ingram Barge Company LLC (Ingram) and Crounse Corporation's (Crounse) Motion in Limine, seeking to limit the proposed expert testimony of certified consulting meteorologist Richard J. Mancini, citing Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*. (ECF No. 556). The matter is now ripe for decision.

Upon consideration of Ingram and Crounse's Motion (ECF No. 556), Allegheny County Sanitary Authority's (Alcosan) Joinder (ECF No. 561), United States of America's Joinder (ECF No. 564), Heartland Barge Management, LLC's Joinder (ECF No. 567), American River Transportation Co., LLC's Joinder (ECF No. 568), the respective briefs (ECF Nos. 556, 610, and 622), the arguments of counsel, and for the following reasons, Ingram and Crounse's Motion will be granted.

I. Background

In the aftermath of the barge breakaway, several barge owners filed lawsuits against Borghese, McKees Rocks Harbor Services, LLC (MRHS), and Industry Terminal & Salvage

Company (ITS), seeking recovery for damages resulting from breakaway barges that had been moored at Jack's Run Fleet.

Borghese, Ohio River Salvage, Inc. (ORS), and MRHS have proffered Richard J. Mancini, a certified consulting meteorologist, as an expert in this action.  In portions of his report, Mr. Mancini discusses decisions made by Brian Mosesso, president of Borghese, in the lead up to the breakaway and opines as to the cause of the movement of the subject vessels.

In their *Daubert* Motion, Ingram and Crounse argue that the Court should exclude some of Mr. Mancini's opinions because he lacks the necessary qualifications to testify to matters outside the field of meteorology.  Ingram and Crounse request that the Court limit Mr. Mancini's trial testimony to only those opinions sounding in meteorology and strike all other comments and opinions.

II.   Relevant Standard

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).  Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data; research;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

III.     Discussion

Ingram and Crounse argue that a portion of Mr. Mancini's comments and opinions are outside his area of consulting meteorologist expertise and must be excluded. The challenged comments and opinions are as follows:

1. "Mr. Mosesso's criterion for special action was flood stage at the Point, 25 feet. **Clearly, he had no cause for great alarm."**

2. "The river forecast in this update indicated a crest at the Point of 22 feet Saturday evening, still below Mr. Mosesso's criterion of 25 feet. According to his testimony, **it appears it was gradually becoming too late to consider any action other than riding it out with the fleet remaining in place."** (Ex. C, Mancini Report at 3). * * * "Despite the best efforts of all involved, the forecast updates were wrong on the 10th, 11th and 12th. **By the time the forecasts 'evolved', it was too late for Mr. Mosesso. He had acted reasonably with respect to weather conditions and forecasts.**"

3. Discussing the deposition testimony of Borghese crewmember David Griffith, Mr. Mancini recites: "Around 5:00 a.m. he noticed that no ice was moving. He states "... it was like someone hit the off switch and just turned the ice off". He later states "I knew it was unusual. I knew it was backing up somewhere." He went off duty at 6:00 a.m. and went to bed, soon to feel the boat move without engine power. **I opine it was impacting ice that moved the boat**."

(ECF No. 556-4 at p. 3-4) (emphasis added).

As regards the first comment/opinion, "Clearly, he had no cause for great alarm," Ingram and Crounse contend that such comments and opinions exceed Mancini's area of expertise and, thus, should be excluded from evidence at trial. Specifically, Ingram and Crounse maintain that Mr. Mancini admits he is not an expert in towing operations or navigation, nor in the operation or management of commercial barge fleets. Therefore, they argue that Mr. Mancini's area of expertise is simply not relevant to the issue of when a commercial barge fleet requires "special action" or when weather and river conditions warrant commercial barge fleet managers to feel a sense of alarm.

Borghese, ORS, and MRHS respond that Mr. Mancini's statement reflects Mr. Mosesso's testimony that he would react differently to a predicted river crest of 20.5 feet versus a predicted river crest of 25.26 feet, i.e. the actual observed river level on the morning of January 13, 2018. Thus, Borghese, ORS, and MRHS contend that Mr. Mancini's statement fairly assesses Mr.

4

Mosesso's testimony, such that expertise in inland river towing or barge fleeting operations and management is not required.

A party may not "filter fact evidence and testimony through [his] expert merely to lend credence to the same" nor may expert testimony "'be used merely to repeat or summarize what the jury independently has the ability to understand.'" *Reedy v. CSX Transp. Inc.*, No. 06–758, 2007 WL 1469047, at *3 (W.D.Pa. May 18, 2007) (citing *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir.2005); and quoting *S.E.C. v. Lipson*, 46 F.Supp.2d 758, 763 (N.D.Ill.1998)). Moreover, to allow an expert to opine as to the likelihood that another witness's testimony is truthful would "encroach[ ] upon the jury's vital and exclusive function to make credibility determinations." *Coney v. NPR, Inc.*, No. 03–1324, 2007 WL 2571452, at *10 (E.D.Pa. Aug.31, 2007) (quoting *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir.1999)).

Here, Mr. Mancini's comment about Mr. Mosesso that, "**Clearly, he had no cause for great alarm,**" is an opinion and it impermissibly attempts to elevate lay testimony. While Mr. Mancini's background demonstrates expertise in meteorology, his background does not extend to a determination of whether or not Mr. Mosesso should have or have not experienced subjective alarm in response to the meteorological conditions vis-à-vis navigation on the river. Therefore, Mr. Mancini's opinion, "**Clearly, he had no cause for great alarm,**" will be excluded.

As regards the second comments/opinions, "**it appears it was gradually becoming too late to consider any action other than riding it out with the fleet remaining in place**… **By the time the forecasts 'evolved', it was too late for Mr. Mosesso. He had acted reasonably with respect to weather conditions and forecasts.**" He had acted reasonably with respect to weather conditions and forecasts," Ingram and Crounse again argue that the Mr. Mancini exceeds the scope of his expertise where he opines or comments upon the timing and

reasonableness of Mr. Mosesso's navigation decisions and actions. Borghese, ORS, and MRHS contend that Mr. Mancini's qualifications and experience in assessing meteorological data provide a sufficient foundation for him to draw upon the facts of record to conclude that, but for the incorrect forecasts three days before the breakaway, Mr. Mosseso would have responded differently to a predicted river crest of 25 feet.

An expert witness must "possess specialized expertise," with "a broad range of knowledge, skills, and training qualify[ing] an expert." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A witness may be qualified to serve as an expert in one discipline, but not in another. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Here, as aptly stated by Ingram and Crounse, Mancini is a meteorologist, not a mariner. The record reflects that Mr. Mancini possesses neither qualifications nor personal experience that he can apply to ascertain or opine about whether a commercial barge fleet operator acted reasonably in response to existing and forecasted weather and river conditions. While Mr. Mancini can opine on and verify weather data, he cannot opine on what a maritime fleeter should or should not have done in response to weather forecasts or whether such mariner actions were reasonable or not. Therefore, Mr. Mancini's statement's regarding the timing and reasonableness of Mr. Mosesso's reactions to the weather and river conditions are not admissible and will be excluded.

Finally, as regards the third comment/opinion, **"I opine it was impacting ice that moved the boat,"** Ingram and Crounse argue that Mr. Mancini's opinion, that the boat movement as felt by Mr. Griffith, was the result of impacting ice, is pure speculation, represents nothing more than Mr. Mancini's inaccurate recitation of Mr. Griffith's deposition testimony, and is not founded upon scientific principles of meteorology. Borghese, ORS, and MRHS maintain that Mr. Mancini was permitted to determine that Mr. Griffith's testimony, regarding the weather and ice

6

conditions prior to the breakaway, was credible, and movants argue that Mr. Mancini appropriately drew his conclusions based on Mr. Griffith's eyewitness account and observations.

An expert must explain the methodologies and principles that support his opinion; he cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting, *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). An "expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Paoli*, 35 F.3d at 742.  Here, Mr. Mancini's comments and opinions, relative to ice impact, are unsupported, subjective, and form an *ipse dixit* conclusion.   When he testified, Mr. Mancini could not indicate a basis or methodology for his opinion that ice had hit the barge based upon Mr. Griffith's testimony.   In particular, Mr. Mancini cannot establish that the boat movement was from impacting ice, or from the fleet breaking away from its moorings, or from any other cause. Mancini testified that, when Mr. Griffith felt a "jolt" while he was lying in bed, it "would seem" to be the impact of ice hitting the boat. (ECF No. 555 at pp. 48-49).   Mr. Mancini could not identify any evidence or testimony supporting his underlying premise that Mr. Griffith felt a "jolt," stating: "I don't know where I got the word 'jolt.'" *Id*. at p. 52.  Instead, Mr. Griffith testified: "You could feel the boat move. The engines weren't running, but the boat moved." (ECF No. 610-5 at p. 9).  Mr. Griffith does not testify to feeling a "jolt" or other impact, he testified only as to feeling movement. Further, Mr. Mancini based his opinion that the boat moved due to impacting ice was "because [ice] was there." (ECF No. 555 at p. 52).  However, Mr. Mancini conceded: "Now whether that just caused a jolt or that was part of the scenario of the fleet breaking away, I don't know." *Id.* Mr. Mancini's personal belief and opinion that ice moved the boat based upon Mr. Griffith's feeling that the boat moved without engine power is speculative, unreliable, and does not assist

7

the trier of fact. Further, such opinion has no basis within his field of meteorological expertise. Therefore, Mr. Mancini's statement regarding that ice impacted the fleet is not admissible and will be excluded.

## ORDER

Following consideration of Ingram and Crounse's Motion (ECF No. 556), Allegheny County Sanitary Authority's (Alcosan) Joinder (ECF No. 561), United States of America's Joinder (ECF No. 564), Heartland Barge Management, LLC's Joinder (ECF No. 567), American River Transportation Co., LLC's Joinder (ECF No. 568), the respective briefs (ECF Nos. 556, 610, and 622), the arguments of counsel, and for the foregoing reasons, Ingram and Crounse's Motion is granted.

Mr. Mancini's opinions and comments as enumerated above are stricken, and he will not be permitted to testify to the same.

Dated: March 2, 2023

_____
Marilyn J. Horan
United States District Judge