**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COMPLAINT OF:** | ) |
| **BORGHESE LANE, LLC** | ) |
| | ) |
| **For Exoneration or Limitation of** | )    **Civil No. 2:18-cv-00533-MJH (Lead Case)** |
| **Liability** | ) |
| | )    **Member and Related Cases: Civil Action Nos.** |
| | )    **18-510; 18-178; 18-913; 18-902; 18-1647; and** |
| | )    **18-317** |

## OPINION and ORDER

This action arises out of a January 13, 2018 multiple-barge breakaway originating at

Jack's Run Fleet, at approximately Mile 4 on the Ohio River, that continued downriver to the

Emsworth Lock and Dam.  Presently before the Court is Ingram Barge Company LLC (Ingram)

and Crounse Corporation's (Crounse) Motion in Limine to exclude the proposed expert

testimony of William J. Stewart pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals*. (ECF Nos. 558).   The matter is now ripe for decision.

Upon consideration of Ingram and Crounse's Motion (ECF Nos. 558), Allegheny County

Sanitary Authority's (Alcosan) Joinder (ECF No. 559), United States of America's Joinder (ECF

No. 564), Heartland Barge Management, LLC's Joinder (ECF No. 567), American River

Transportation Co., LLC's Joinder (ECF No. 569), the respective briefs (ECF Nos. 578, 612, and

628), the arguments of counsel, and for the following reasons, Ingram and Crounse's Motion will

be granted.

I.      Background

In the aftermath of the barge breakaway, several barge owners filed lawsuits against

Borghese, McKees Rocks Harbor Services, LLC (MRHS), and Industry Terminal & Salvage

Company (ITS), seeking recovery for damages resulting from breakaway barges that had been moored at Jacks Run Fleet.

Borghese, Ohio River Salvage, Inc. (ORS), and MRHS have proffered William J. Stewart, as an expert in this action to opine "concerning the actions of and conduct of Borghese Lane, Brian Mosesso, and the crews of the M/V Cori Weiland and the M/V James Garrett." (ECF No. 558-4).   In his report, Mr. Stewart offered the following:

> Based on my experience and the evidence I have reviewed, that failure of the cell #8 D ring was the cause of the breakaway. The actions by Borghese did not cause the breakaway. In my opinion, had the D ring not failed, nothing would have happened. Instead, the fleet would have remained secure.
>
> In my opinion, Mosesso performed his responsibilities as the owner of his company in a very good and responsible fashion. He repeatedly made proper decisions concerning the fleeting of barges at Jack's Run, including such decisions as how many barges to fleet at Jack's Run, how many boats to be in flood watch, and training his crews to use all available mooring lines, wires, etc.
>
> Further, Borghese boats and crews did an outstanding job of securing and tending the fleet before the breakaway and then trying to save the fleet after the breakaway.  They should be commended for a job well done and for saving the lives of all crewmembers. If not for a broken D ring, everything would have stayed in the fleet.

*Id*. at p. 6.

In its *Daubert* Motion, Ingram and Crounse contend that Mr. Stewart is not qualified to render his opinions.

II.     Relevant Standard

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).  Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data; research;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

    III.    Discussion

       Ingram and Crounse argue that Mr. Stewart should be precluded from offering any opinion testimony because he is not qualified to testify as to the reasonableness of Borghese's actions or inactions in determining the size, width, and configuration of the Jacks Run fleet. They further maintain that Mr. Stewart is not qualified to testify as to whether the size, width or configuration of the fleet caused it to break away, because he has no experience with barge breakaways other than passively watching them occur or assisting in rounding up barges that have broken away.

       Borghese Lane, LLC ("Borghese"), Ohio River Salvage, Inc., ("ORS") and McKees Rocks  Harbor Services, LLC ("MRHS") contend Mr. Stewart's experiential expertise and specialized knowledge qualifies him as an expert in commercial fleeting and piloting.   In particular, they boast Mr. Stewart's 50-year experience as a licensed towboat captain operating commercial vessels which imparts "skill or knowledge greater than the average layman" with respect to fleeting and piloting expertise.   Borghese, ORS, and MRHS also maintain that Mr. Stewart's experience included two years at Todd Towing in the 1970s maintaining the Dravo fleets, putting barges in and out of the fleets, developing the fleeting areas, creating fleets, and determining fleet locations.   They argue, when on watch, Mr. Stewart configured the fleet under applicable circumstances.

       In response, Ingram and Crounse argue that that Mr. Stewart's 50 years of piloting experience cannot substitute for barge fleet management experience, which would otherwise

qualify him to render opinions relating to the determination of the size, width, and configuration of barge fleets.  In general, they maintain that Mr. Stewart's experience is exaggerated based upon limited and temporally distant experiences and wherein Mr. Stewart testified he was not "any more involved in determining how wide the fleet should be than any other line haul pilot that was dropping off barges or picking up barges from the fleet." (ECF No. 557 at p 58:17-21).

A witness may testify as an expert if qualified by knowledge, skill, experience, training or education. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The party proffering expert testimony must show by a "preponderance of proof" that the expert whose testimony is being offered is qualified and will testify to scientific, technical or specialized knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case. *Daubert*, 509 U.S. at 592, n. 10. A witness may be qualified to serve as an expert in one discipline, but not in another. *Kumho Tire*, 526 U.S. at 150. In order to be deemed relevant, an expert's testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert*, 209 U.S. at 591. The relevancy requirement has been interpreted to mean that expert testimony must "fit" the facts of the case; that is, the expert testimony must assist the trier of fact in understanding the evidence or determining a fact in issue and there must be a connection between the scientific, technical or specialized research or test results being offered and a disputed factual issue in the case in which the expert will testify. *Daubert*, 209 U.S. at 591-92.

Here, following careful review of Mr. Stewart's CV, his report, and his deposition testimony, Ingram and Crounse's arguments are well-taken.  In order for Mr. Stewart to testify at trial, he must have special training, education, experience or knowledge in determining the size, width and configuration of barge fleets and the effect, if any, of these factors in causing barge

breakaways.  However, Mr. Stewart has limited and dated experience in fleeting barges, in relation to size, width and configuring fleets, during his career as a licensed trip pilot.  (ECF No. 557 at p. 61).   Mr. Stewart testified that he was not an expert in barge fleet management. *Id.* at pp. 59-60. Nonetheless, there is record evidence of his experience as a licensed trip pilot, which would qualify him to opine regarding actions taken by various persons and entities involved with the events at issue in this case.  However, in relation to his more recent relevant experience, Mr. Stewart admitted that he did not have any involvement in determining the number, width, and configuration of barge fleets.  *Id.* at pp. 58-61.   Further, while he had limited experience with breakaway events, by observing a breakaway event in process and/or assisting in a few post-breakaway barge rescues, he has no past experience with determining the number, width, and configuration of barge fleets in relation to breakaway incidents. Neither his training nor experience provide him with sufficient expertise to qualify him to offer any opinions regarding fleet management, including determining the size, width, or configuration of fleets in impending breakaway circumstances or regarding cause or causes for breakaway events.   Thus, Mr. Stewart cannot opine as to the size, width, or configuration of the fleet as such relate to the weather and river conditions at issue or as to the cause of the breakaway in this case.  Further, he cannot offer any opinions regarding causation in relation to the breakaway.

Accordingly, Ingram, and Crounse's Motion to Exclude Mr. Stewart will be granted as to Mr. Stewart's lack of qualification to opine as to causation and as to size, width, and configuration of the fleet in relation to causation in the breakaway at issue.

## ORDER

Following consideration of Ingram and Crounse's Motion (ECF Nos. 558), Allegheny County Sanitary Authority's (Alcosan) Joinder (ECF No. 559), United States of America's

Joinder (ECF No. 564), Heartland Barge Management, LLC's Joinder (ECF No. 567), American

River Transportation Co., LLC's Joinder (ECF No. 569), the respective briefs (ECF Nos. 578,

612, and 628), the arguments of counsel, and for the foregoing reasons, Ingram and Crounse's

Motion to Exclude William Stewart is granted.  Mr. Stewart will be precluded, as unqualified, to

opine as to as to causation and as to size, width, and configuration of the fleet in relation to

causation in the breakaway incident at issue.


Dated: April  6, 2023

Marilyn J. Horan
United States District Judge