IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMPLAINT OF:<br>BORGHESE LANE, LLC<br><br>For Exoneration or Limitation of Liability | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 2:18-cv-00533-MJH (Lead Case)<br><br>Member and Related Cases: Civil Action Nos. 18-510; 18-178; 18-913; 18-902; 18-1647; and 18-317 |

**OPINION and ORDER**

This action arises out of a January 13, 2018 multiple-barge breakaway, that originated at Jack's Run Fleet at approximately Mile 4 on the Ohio River and continued downriver to the Emsworth Lock and Dam. Presently before the Court is Borghese, ORS, and MRHS's Motion in Limine to exclude opinions of Gregory B. Weeter, citing to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*. (ECF No. 575). The matter is now ripe for decision.

Upon consideration of Borghese, ORS, and MRHS's Motion (ECF No. 575), the respective briefs (ECF Nos. 584, 594, 598, and 630), the arguments of counsel, and for the following reasons, Borghese, ORS, and MRHS's Motion will be granted in part and denied in part.

I. Background

In the aftermath of the barge breakaway, several barge owners filed lawsuits against Borghese, McKees Rocks Harbor Services, LLC (MRHS), and Industry Terminal & Salvage Company (ITS), seeking recovery for damages resulting from breakaway barges that had been moored at Jack's Run Fleet.

ITS and ALCOSAN retained Gregory B. Weeter to evaluate the suitability of the Jack's Run river cells for barge mooring operations as of January 13, 2018. In his report, Mr. Weeter opines as follows:

> It is my opinion that in spite of pre-existing wear and tear, the cells in the Jacks Run Fleet used to moor loaded barges at the time of the January 13, 2018 breakaway incident were entirely suitable for that purpose if proper mooring practices were undertaken by MRHS/Borghese in recognition of the weather and river conditions that had been developing in the days leading up to the breakaway. In my opinion, the condition of those cells did not result in any failure nor cause of the January 13, 2018 breakaway.
>
> Further, it is my opinion that ITS or ALCOSAN did not violate any industry standard for fleeting operations by not dredging the permitted areas at the downriver end of the Jacks Run Fleet and that MRHS/Borghese would have been obliged to take that shoaling issue into account in the barge mooring decisions made leading up to the breakaway.

(ECF No. 575-4).

In their *Daubert* motion, Borghese, ORS, and MRHS argue that Mr. Weeter does not possess the professional qualifications to opine on several areas in this case, and Mr. Weeter cannot testify as to any industry standards for the dredging of harbors at fleeting areas.

II.   Relevant Standard

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data; research;
>
> (c) the testimony is the product of reliable principles and methods; and

2

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

  III.  Discussion

3

Borghese, ORS, and MRHS maintain that Mr. Weeter does not possess the qualifications to opine on the following subject areas:

1. The condition of the mooring cells at the Jack's Run Fleeting Area;

2. Whether the mooring cells failed or caused the breakaway at issue;

3. The fleet management practices and procedures of McKees Rocks Harbor Services LLC, Borghese Lane LLC, or both of them;

4. Whether McKees Rocks Harbor Services LLC, Borghese Lane LLC, or both of them exercised proper mooring practices in recognition of the weather and river conditions in the days leading up to the breakaway;

5. Whether McKees Rocks Harbor Services LLC, Borghese Lane LLC, or both of them were obliged to take shoaling issues at the Jack's Run Fleeting Area into account in barge mooring decisions; and

6. The contractual obligations of McKees Rocks Harbor Services LLC, Borghese Lane LLC, or both of them.

With regard to subject areas 1 through 5, Borghese, ORS, and MRHS maintain that Mr. Weeter improperly renders opinions on said subject areas without qualifications in the areas of engineering or metallurgy. In particular, they argue that Mr. Weeter should not be able to testify as to the suitability of the mooring cells, which included an alleged metal failure of U-bolts, and opine as to MRHS and Borghese's proper mooring practices. With regard to subject area 6, Borghese, ORS, and MRHS maintain that Mr. Weeter cannot testify, based upon a lack of qualifications, to any legal opinion or conclusion relative to any agreements among ALCOSAN, ITS, Borghese, and MRHS.

In opposition, ITS and Alcosan argue that Mr. Weeter has over forty years' experience as a marine surveyor, during which time, he apprenticed, obtained numerous relative certifications, and conducted thousands of surveys of marine structures, including of fleeting areas, for purposes of determining the suitability and safety of the structures.   ITS and Alcosan further

contend that they engaged Mr. Weeter to provide his expert opinion as to the suitability of the Jack's Run Fleet for mooring barges, which he has done professionally on scores of occasions. ITS and Alcosan assert that determining whether a fleeting area is suitable includes assessing how the fleet will properly be used, which, in turn, implicates the practices of the entities managing the fleet.  ITS and Alcosan concede that Mr. Weeter is not qualified to offer a lay contractual interpretation.

An expert witness must "possess specialized expertise," with "a broad range of knowledge, skills, and training qualify[ing] an expert." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). At a minimum, a proffered expert ... must possess skill or knowledge greater than the average layman ..." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). Experts who lack formal education or training in a particular area must rely upon practical experience to demonstrate that they possess "the minimum qualifications necessary to testify as an expert." *Elcock v. Kmart Corp.*, 233 F.3d 734, 743 (3d Cir. 2000).

Here, after a careful review of Mr. Weeter's report and testimony relative to experience and education, Mr. Weeter possesses sufficient qualifications to opine on the mooring conditions at Jack's Run Fleet.  In this Court's assessment, Mr. Weeter's opinions provide a general view of the mooring area, its condition, and attendant practices by the entities involved.   The issue and context of this case calls for a medley of experts to assist the trier of fact in reaching conclusions on any liability.  Mr. Weeter's report and testimony cautiously, and prudently, avoids opinions on engineering and metallurgy that will be left to other experts in this case.  However, Mr. Weeter does opine "the condition of those cells did not result in any failure nor cause of the January 13, 2018 breakaway."  Encompassed in that causation opinion is a suggestion that he is opining on the metallurgical/engineering aspects of the U-bolts at issue.  He

is admittedly not qualified to render such an opinion., but Mr. Weeter, as a marine surveyor, is otherwise qualified to render opinions on other mooring aspects.  In addition, with regard to any opinions and testimony as to contractual agreements in this case, Mr. Weeter is not qualified to testify as those are for the Court to interpret without regard to lay or expert testimony.

Accordingly, Borghese, ORS, and MRHS's Motion to Exclude Mr. Weeter on the basis of qualifications will be denied but granted as to opinions regarding metallurgy/engineering and contractual interpretation.

Borghese, ORS, and MRHS next argue that Mr. Weeter cannot testify as to any industry standards for the dredging of harbors at fleeting areas because no such standards exist.   ITS and Alcosan contend that based upon Mr. Weeter's experiences of  "having gone to many fleets, met with many fleet operations, and been in fleets before and after accidents," Mr. Weeter developed an understanding of what is required of fleeting area operators to keep a fleet safe, even though there are no written standards for fleet operators.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Chill v. Calamos Advisors LLC*, No. 15-cv-1014, 2019 WL 5067746, at *25 (S.D.N.Y. Oct. 9, 2019).  Here, Movants arguments center on factual bases for Mr. Weeter's opinion, namely the non-existence of industry standards, despite such nomenclature utilized in his report.  In his testimony, Mr. Weeter clarified that his factual basis was based upon an experiential understanding.  Such understanding and use of nomenclature goes not to admissibility but to credibility.   Accordingly, Borghese, ORS, and MRHS's Motion to Exclude Mr. Weeter's opinions, on the basis of his reference to industry standards, will be denied.

ORDER

Following consideration of Borghese, ORS, and MRHS's Motion (ECF No. 575), the respective briefs (ECF Nos. 584, 594, 598, and 630), the arguments of counsel, and for the following reasons, Borghese, ORS, and MRHS's Motion is granted in part and denied in part. Mr. Weeter will be precluded from testifying on metallurgy/engineering opinions, and any legal opinion or interpretation of the agreements at issue in this case.

Dated: April 6, 2023

                                                    Marilyn J. Horan
                                                   United States District Judge